CALLOWAY, J., Ad Hoc.
| tin count one, the defendant, Kenneth Modique, was found guilty as charged of distribution of methamphetamine. He was sentenced to serve 30 years at hard labor, fined $2,000.00 plus fees, and ordered to serve 90 days in the parish jail in default of payment. In count two, the defendant was found guilty of the responsive verdict of possession of methamphetamine. He given a concurrent sentence of five years at hard labor, fined $1,000 plus fees, and ordered to serve 45 days in the parish jail in default of payment. Additionally, the defendant was ordered to reimburse .the Indigent Defender Board (“IDB”) $2,000,
Claiming excessiveness, the defendant now challenges the constitutionality of his sentences. ‘ For the following reasons, we affirm with amendment to vacate the portion of the sentences imposing jail time in default of payment of the fees and court costs, and the portion requiring reimbursement to the IDB by this indigent defendant.
FACTS
On August 11, 2014, the defendant was charged with distribution of methamphetamine, in violation Of La. R.S. 40:967(A)(1). The bill of information was amended March 12, 2015, to include an additional charge of possession'of methamphetamine with intent to distribute, in violation of La. R-.S. 40:967(A)(1). The defendant pled not guilty, and a trial was held on May 25, 2015, on the two counts.
As to count one, Detective Kevin Wyles (“Wyles”), of the Caldwell Sheriffs Department, testified that he was working in the narcotics department on May" 29, 2014, when Christina Boulton (“Boulton”) 12approached ’him" about assisting in efforts to get the street-level drug dealers off the streets. ■ Boulton acted as an informant to make a controlled drug buy from the defendant.
Boulton, who admitted to a criminal history and to having used drugs other than methamphetamine or cocaine, testified that she had previously met the defendant, whom she also knew as “Q.” Boulton called -the defendant on May 29, 2014, and said she was looking for about $100.00 worth" of methamphetamine." They arranged to meet in Columbia Gardens, where the sale occurred. After the sale, Boulton met with Wyles to give him the drugs.
Regarding count two, Sedric Meredith (“Meredith”), an investigator with the Caldwell Parish Sheriffs Department, testified that" he' was participating in a “round up” of various drug cases on July 3, 2014, when he received information that the defendant and Antonio Harris (“Harris”) were at a trailer on Duckett Street. Meredith proceeded to the location with other officers to execute warrants for their arrest. . In making the arrest, the officers found $2,400.00 in cash and a small" baggie of drugs.
*286 Todd Bridges (“Bridges”), with the Louisiana Department of Probation and Parole, testified that he was with, the “round up” team that executed the arrest warrants. He testified that the money was found in a bedroom that Harris had been in but that the defendant said the room was his. He found a roll of money totaling $2,400 on the top shelf of the bedroom closet and a small cellophane bag containing methamphetamine inside it on a wooden shelf. The lab report confirmed the substance in the | ¡¡bag to be methamphetamine.
After the state rested, the defendant chose to remain silent and declined to testify. By vote of 11-1, the jury found the defendant guilty as charged of count one, distribution of methamphetamine,- and guilty on count two of the responsive verdict of possession of methamphetamine. The trial court ordered a PSI report. The state filed a habitual offender bill.
At sentencing on May 26, 2015, and having reviewed the PSI .report, the trial court noted that the defendant had four prior felony convictions for accessory to murder, armed robbery, burglary, and introduction of contraband into a penal facility. The court observed that the defendant, age 40, was a career criminal who had spent the.majority of his adult life in jail and had his parole revoked three times. The court found that the defendant’s drug sales created a risk to society and that he had not shown any positive-response to prior attempts at rehabilitation in a correctional -setting.
After stating, that any lesser sentences would deprecate the seriousness of the offenses, the court imposed a sentence of 30 years at hard labor on count one, distribution of methamphetamine, along with a $2,000 fine, plus fees. In default of payment, the trial court ordered the defendant to serve 90 days in jail. On count two, possession of methamphetamine, the.court imposed a concurrent sentence of five years at hard labor, along with a $1,000.00 fine plus fees, with 45 days in the -parish jail in default of payment. The court ordered the defendant to reimburse the IDB $2,000. The defendant was given credit for time served and advised regarding post-kconviction relief.
After sentencing, the state withdrew the habitual offender bill. Claiming that the imposed sentences were excessive, the defense objected to the sentences and filed a rhotion to reconsider. The trial court denied the motion. The defendant now appeals his sentences.
DISCUSSION
Asserting error by the trial court in imposing excessive sentences totaling 30 years at hard.labor, the defendant argues that the court sentenced him to the maximum sentence ón both convictions without reviewing any -mitigating circumstances, such as his personal history. He asserts that his sentences were not tailored to his offenses and that the trial court failed to consider the sentencing guidelines. He urges that the goals of punishment and rehabilitation could be better accomplished with less severe sentences. -
In opposition, the state argues that the trial court did comply with the sentencing guidelines and reviewed the' PSI report, the facts of the case, and the defendant’s extensive. criminal history. The state argues that the nature of the defendants prior felony convictions, his multiple, parole violations, and the risk he poses to society indicate-that he is in need of a custodial environment. The state also notes the benefit received by the defendant because it did not proceed .on the habitual offender bill.
*287 The penalty for distribution of methamphetamine, a violation of La. R.S. 40:967(A)(1), is imprisonment at hard labor for 2 to 30 years and an optional fíne of not more than $50,000.00. La. R.S. 40:967(B)(1).
The penalty for possession of methamphetamine, a violation of La. 1rR.S. 40:967(C), is imprisonment with or without hard labor for no more than five years and an optional fine of not more than $5,000.00.
Because the state originally charged the defendant as a fourth felony offender, under La. R.S. 15:529.1(A)(4)(a), he faced, a more substantial sentence, as follows:[1]
(4) If the fourth or subsequent felony is' such that, upon, a first conviction the offender would be punishable by imprisonment for any term less than.his natural life then:
(a) The person shall be sentenced to imprisonment for the fourth or subsequent felony for a determinate term not less than the longest prescribed for a first conviction but in no event less than twenty years and not more than his natural life.
The trial court has wide discretion in imposing sentence within minimum and maximum limits allowed by the statute; therefore, a sentence will not be set aside as excessive unless the defendant shows the trial court abused its discretion. State v. Hardy, 39,233 (La.App.2d Cir.1/26/05), 892 So.2d 710; State v. Young, 46,575 (La.App.2d Cir.9/21/11), 73 So.3d 473, unit denied, 2011-2304 (La.3/9/12), 84 So.3d 550. A trial judge is in the best position to consider the aggravating and mitigating circumstances' of a particular case, and, therefore, is given broad discretion in sentencing. State v. Zeigler, 42,661 (La.App.2d Cir.10/24/07), 968 So.2d 875. The reviewing court does not determine whether another sentence would have been more appropriate, but whether the trial court abused its discretion. State v. Esque, 46,515 (La.App.2d Cir.9/21/11), 73 So.3d 1021, writ denied, 2011-2347 (La.3/9/12), 84 So.3d 551.
An excessive sentence is reviewed by examining whether the trial court adequately considered the guidelines established in La. C. Cr.,P. art, 894.1 and whether the, sentence is constitutionally excessive. State v. Gardner, 46,688 (La. App.2d Cir.11/2/11), 77 So.3d 1052. Where the defendant’s motion to reconsider sentence alleges mere excessiveness of sentence, on, appeal the reviewing court is limited to considering whether the sentence is constitutionally excessive. La. C. Cr. P. art. 881.1; State v. Mims, 619 So.2d 1059 (La.1993); State v. Boyd, 46,321 (La. App.2d Cir.9/21/11), 72 So.3d 952. A review of the sentencing guidelines does not require a listing of every aggravating or mitigating circumstance; the trial court need only articulate a factual basis for the sentence. State v. Cunningham, 46,664 (La.App.2d Cir.11/2/11), 77 So.3d 477. The defendant’s personal history and criminal record, as well as the seriousness of the offense, are some of the elements considered, but the trial court is not required to weigh any specific matters over other matters. State v. Moton, 46,607 (La.App.2d Cir.9/21/11), 73 So.3d 503, writ denied, 2011-2288 (La.3/30/12), 85 So.3d 113; State v. Caldwell, 46,645 (La.App.2d Cir.9/21/11), 74 So.3d 248, writ denied, 2011-2348 (La.4/27/12), 86 So.3d 625. All convictions and all prior criminal activity may be con *288 sidered as well as other evidence normally excluded from the trial. State v. Platt, 43,708 (La.App.2d Cir.12/3/08); 998 So.2d 864, writ denied, 2009-0265 (La.11/6/09), 21 So.3d 305.
Maximum sentences are generally reserved for the worst offenses and [ 7offenders. State v. Taylor, 41,898 (La. App.2d Cir.4/4/07), 954 So.2d 804. However, in cases where the defendant has pled guilty to an offense which does not adequately describe his conduct, the general rule does not apply, and the trial court has great discretion in imposing the maximum sentence for the pled offense. State v. Black, 28,100 (La.App.2d Cir.2/28/96), 669 So.2d 667, writ denied, 96-0836 (La.9/20/96), 679 So.2d 430. A sentence can be constitutionally excessive, even when it falls within statutory guidelines, if (1) the punishment is so grossly disproportionate to the severity of the crime that when viewed in light of the harm done to society, it shocks the sense of justice; or, (2) it serves no purpose other than to needlessly inflict pain and suffering. State v. Fatheree, 46,686 (La.App.2d Cir.11/2/11), 77 So.3d 1047; State v. Lobato, 603 So.2d 739 (La.1992); State v. Livingston, 39,390 (La.App.2d Cir.4/6/05), 899 So.2d 733; State v. White, 37,815 (La.App.2d Cir.12/17/03), 862 So.2d 1123.
Here, the defendant benefitted from a substantial reduction in potential exposure to confinement.- The PSI report shows that the defendant was on parole when he committed the subject offenses. His parole was:revoked on July 15, 2014. In addition to these two new felony convictions, the defendant- had been convicted of armed robbery, simple burglary, and introducing contraband into a penal facility. Based on these convictions, he faced a habitual offender bill as a fourth felony habitual offender and a harsher sentence. In fact, the sentences imposed would have been the minimum sentences available under the habitual offender bill.
| ^Additionally, the PSI report also shows a 1994 conviction for accessory to second degree murder, some misdemeanor convictions, and that he violated his parole twice before, in 2007 and in 2012.
The trial court noted, that the defendant was 40 years old and that he had been in jail for a large part of his life. Based on the defendant’s career of crime and propensity to violate his parole, the court concluded that the likelihood of rehabilitation was poor. Considering the defendant’s history of violent crime and drug trafficking, the court found him to be a danger to society and concluded that any lesser sentence would deprecate the seriousness of his offenses.
Although the trial court did not elaborate on the details of the defendant’s personal background, education, and work history, there was a factual basis for the sentences in the record as well as the court’s consideration of the defendant’s criminal history and parole violations. We observe that since the defendant has spent a majority of adulthood in jail, there would be little in the way of personal, educational, or work history to consider in mitigation.
The terms of imprisonment and the fines imposed are within the statutory guidelines. Under the facts of this case, we find that the sentences are neither disproportionate- to the offenses, nor a needless infliction of pain and suffering. The sentences are not. constitutionally excessive. Accordingly, we find no merit to the assignment of error.
ERRORS PATENT
An indigent defendant may not be subjected to imprisonment because 19he is unable to pay a fine which is part of his *289 sentence. Bearden v. Georgia, 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983); State v. Monson, 576 So.2d 517 (La.1991); State v. Kerrigan, 27,846 (La.App.2d Cir.4/03/96), 671 So.2d 1242. A defendant’s claim of indigence in such a situation may be discerned from the record. State v. Williams, 484 So.2d 662 (La.1986); State v. Kerrigan, supra. This court considers it error for a trial court to impose jail time in default of payment and may amend an indigent defendant’s sentence to vacate that portion imposing a fine in lieu of jail time. State v. Kerrigan, supra; State v. Tillman, 43,569 (La.App.2d Cir.10/22/08), 997 So.2d 144, writ denied, 2008-2836 (La.9/25/09), 18 So.3d 85.
The defendant’s indigency is dis-cernable from the record. The defendant was represented at trial by the IDB and is represented on appeal by the appellate project. The jurisprudence is clear that a defendant cannot be sentenced to serve jail time because he is unable to pay fines and court costs. Bearden v. Georgia, supra; State v. Tillman, supra. Because of the defendant’s indigent status, the trial court erred in imposing jail time in the event of default on payment of the imposed fines and fees. Therefore, we amend the sentences imposed to vacate the imposition of jail time in lieu of payment of fines and fees.
Furthermore, La. C. Cr. P. arts. 895 and 895.1 authorize restitution and payment to the indigent defender program only when the trial court suspends the imposition or execution of sentence. State v. Frith, 561 So.2d 879 (La.App. 2d Cir.), writ denied, 571 So.2d 625 (La.1990); State v. Fluitt, 482 So.2d 906 (La.App. 2d Cir.1986). In this case, the trial court did not suspend the defendant’s sentences. For this reason, we likewise amend the sentences to vacate the portion ordering restitution to the IDB.
CONCLUSION
For the above reasons, we affirm the defendant’s convictions and sentences, as amended to delete the portions of his sentences ordering payment to the IDB and imposing jail time in the event of default on payment of the fines and fees.
AFFIRMED, AS AMENDED.

. The nature of the defendant’s prior felonies did not qualify him for mandatory life imprisonment under La. R.S. 15:529.1(A)(4)(b) because his 1999 felony convictions for armed robbery and burglary were on the same day, and under La. R.S. 15:529,1(B), only counted as one felony conviction for the purposes of the habitual offender statute.